IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD J. HOLLEMAN, | § | |
| TDCJ #297567, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0178 |
| | § | |
| LT. MCKEE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Ronald J. Holleman has filed suit under 42 U.S.C. § 1983, alleging violations of his civil rights. The only remaining defendants, Lieutenant James McKee and Sergeant Kevin Simmons, have filed a joint motion for summary judgment. (Doc. # 66). Holleman, who is represented by appointed counsel, has filed a response. (Doc. # 69). After considering all of the pleadings, the summary judgment evidence, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Holleman is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Allred Unit in Iowa Park, Texas. Holleman sues Lieutenant McKee and Sergeant Simmons, both of whom are employed by TDCJ as correctional officers at the Walls Unit in Huntsville, Texas, where Holleman was formerly assigned. Holleman complains that, when he was assigned to the Walls Unit on August 13, 2003, Lieutenant McKee and Sergeant Simmons used excessive force against him. Holleman's altercation with Lieutenant McKee and Sergeant Simmons,

which was documented in a formal TDCJ Use of Force Report (M-03632-08-03), is summarized below based on the pleadings and the summary judgment evidence.

A.    **The Use of Force at Issue**

Holleman arrived at the Walls Unit on August 13, 2003, while on his way to another facility.  In prison jargon, this means that Holleman was considered a "transient" inmate. Holleman was assigned to share cell P-1-2 with another inmate.  A dispute arose when Holleman was told to take the top bunk.  Holleman immediately complained about the cell assignment to Sergeant Simmons, citing a restriction in his "dermatology" records that required a bottom bunk on the bottom row (*i.e.*, the first floor).

Medical records reflect that, in addition to having hypertension and Hepatitis C, Holleman suffers from a skin condition known as "lichen planus" over approximately forty percent of his body, which causes inflammation or lesions mainly on his lower extremities. The plaintiff describes his condition as "a painful and disabling skin disease that causes lesions on his body."  (Doc. # 68, Amended Complaint, ¶ 1).  A physician for TDCJ describes it as "an acute or chronic inflammatory condition of the skin characterized by flat violaceous, shiny, pruritic papules." (Doc. # 66, Exhibit A, Affidavit of Dr. Bruce W. Smith). It is not, however, a condition that interferes with his normal activities of daily living or the use of his limbs.  (Doc. # 45, Exhibit A, Affidavit of Dr. Natascha Dumas).

Sergeant Simmons refused to change Holleman's cell assignment.  Holleman continued to complain and asked to speak with a supervisor.  Sergeant Simmons escorted Holleman to see Lieutenant McKee, who was in charge that day.  Holleman explained that

he needed a bottom bunk on the bottom row because of his skin condition.  Lieutenant McKee placed Holleman in a pre-hearing detention cell (cell L-2-3) so that the medical department could review his chart.  Holleman was examined at around 2:30 p.m. by the medical department.  At that time, the nurse noted that Holleman had no ("Ø") housing restrictions, although he had a number of limitations on his ability to work.

After the medical examination, a decision was made to return Holleman to pre-hearing detention because he had refused to accept housing in violation of prison rules.  On the way there, Sergeant Simmons returned Holleman to cell P-1-2 to pick up Holleman's personal property.  Holleman had with him two nylon mesh bags of personal property.  Together the bags reportedly weighed approximately 45 to 50 pounds.  Holleman, who was handcuffed with his arms behind his back during the transfer to pre-hearing detention, was instructed to carry the property bags behind his back.  Holleman objected that carrying the bags in this manner would cause them to "bang against the backs of his knees where he had bad lesions from his lichen planus."  Holleman asked to be handcuffed in the front so that it would be less painful to carry the bags.  Sergeant Simmons reportedly refused and ordered Holleman to carry the bags as directed or else he would treat the property as "abandoned."  Holleman proceeded to pre-hearing detention without his personal property.

Once Holleman was returned to pre-hearing detention, officers prepared an inventory sheet to document the items of Holleman's personal property.  Holleman refused to sign the property inventory sheet, insisting that he did not intend to abandon his property.  Holleman also refused to return the inventory sheet to Sergeant Simmons.  Later, Lieutenant McKee

3

came to the cell and demanded the inventory sheet.  Holleman explained that he did not
intend to abandon his property, but that he simply could not carry it in the manner directed
by Sergeant Simmons.  Holleman claims that, after he refused to sign the inventory sheet or
to return the sheet unsigned to the officers, Lieutenant McKee and Sergeant Simmons entered
his cell and "beat" him "under the guise of retrieving an inventory sheet for property that had
been wrongfully confiscated."  There is no dispute that Holleman refused a direct order from
the officers to return the inventory sheet.[1]

A ranking official, Lieutenant Jerry Montgomery, prepared a Use of Force Report
with written statements from the participants and witnesses.  According to written statements
by Sergeant Simmons and Lieutenant McKee Holleman refused direct orders to return the
property inventory sheet.  Holleman then "took an aggressive stance" by clenching his fists
and telling the officers to "come on with it."  Lieutenant McKee ordered Holleman to submit
to hand restraints (*i.e.*, hand cuffs) and explained that force would be used to restrain him
if he failed to obey.  Holleman reportedly refused and continued his aggressive demeanor.
When Lieutenant McKee attempted to place restraints on Holleman's right arm, Holleman
allegedly "jerked away."  At this time, Sergeant Simmons and Lieutenant McKee used force

---

[1]     A copy of the inventory sheet is attached to Holleman's original complaint.  (Doc. # 1,
Original Complaint, Exhibit 9).  The record establishes without contradiction that the
inventory paperwork provided by Holleman consists of two pages.  One page is a form listing
items of Holleman's property and the reason for the inventory.  Included with that inventory
sheet is another one-page form, which indicates that Holleman's property was returned to him
on August 13, 2003, after his ownership was established.  Holleman, who was transferred
from the Walls Unit to the Darrington Unit on August 14, 2003, does not allege or show that
his personal property was actually confiscated or that he was forced to leave the facility
without his personal items.

to move Holleman downward onto his bunk.  According to Sergeant Simmons and Lieutenant McKee, Holleman then began to swing with his left arm and was attempting to kick them. While struggling to subdue Holleman, Sergeant Simmons called for assistance and asked for a video camera to record the incident.

According to the defendants' evidence, two other officers arrived to assist Sergeant Simmons and Lieutenant McKee.  Officer Timothy Alexander stated that, when he arrived at the cell, he saw Holleman attempt to swing at Lieutenant McKee as he and Sergeant Simmons were trying to subdue Holleman with hand restraints.  Officer Robert Pittman likewise arrived at the cell and witnessed Lieutenant McKee and Sergeant Simmons attempting to apply hand restraints to Holleman, who was resisting and trying to strike Lieutenant McKee.  The officers ultimately were able to restrain Holleman by taking him to the floor.

Holleman, who also provided a written statement as part of the Use of Force Report, provides a different version of the incident.  In his statement, Holleman admits that he refused to sign the inventory sheet and that he refused to return the paperwork to Sergeant Simmons and Lieutenant McKee as directed.  According to Holleman, the officers proceeded to beat him:

> Lt. McKee then came in [to the cell] and attacked me, Sgt. Simmon[s] was the next to come into [the] cell and hit me.  He took out his handcuff[s], cuffed my right wrist as Lt. McKee held my left one and was striking me about the head, [and] kicked [me] in [the] groin and butt.  Even after I was restrained, Lt. McKee continued to hit me in my stomach and head.

At that point, according to Holleman, Officer Alexander entered the cell and shielded him from any further blows.  In an affidavit attached to the complaint, Holleman describes the altercation in similar terms, noting that the entire incident lasted approximately 1½ to 2 minutes.  (Doc. # 68, Amended Complaint, Exhibit D, at 3-4).

Pursuant to TDCJ policy, Holleman was examined in the medical department following the use of force.  At approximately 5:00 p.m., a nurse observed a 2-3 centimeter "upside-down" U-shaped laceration on Holleman's left shin.  Holleman complained of a cut to the head, but the nurse observed no redness, cuts, bruises or contusions during the examination.  The laceration was treated with a pressure dressing.  One hour later, Holleman refused additional treatment.  The record contains several photographs taken of Holleman following the altercation, including photos of the U-shaped laceration on his leg.

According to the Use of Force Report, there was no violation of TDCJ policy noted in connection with the altercation involving Holleman.  No officers were disciplined as a result of the investigation.  Holleman, on the other hand, was charged with a disciplinary violation for attempting to assault Lieutenant McKee.[2]  The TDCJ Office of Inspector General reviewed the Use of Force Report and determined that an Internal Affairs Division investigation was not warranted.

Holleman insists, however, that excessive force was used and he filed this civil rights lawsuit under 42 U.S.C. § 1983, in January of 2005.

---

[2]     The record contains no information about the result of the disciplinary charges, and it is unknown whether Holleman was convicted.

6

**B.**   **The Parties' Contentions**

Initially, the Court dismissed this case without prejudice as required by 28 U.S.C. § 1915(g), which precludes an inmate from proceeding *in forma pauperis* if he has filed three or more frivolous lawsuits in the federal courts.[3]   The Court reinstated the lawsuit after Holleman paid the filing fee.   The Court appointed counsel, who conducted discovery and recently filed an amended complaint on Holleman's behalf.[4]   (Doc. # 68, Amended Complaint).

In the amended complaint, Holleman maintains that Lieutenant McKee and Sergeant Simmons used "an excessive amount of force in violation of the TDCJ Use of Force Policy to obtain the property inventory form."   Holleman also complains that the officers did not call for a video camera to record the use of force until after Holleman had already been "beaten and restrained."   Holleman alleges that, as a result of the defendants' actions, he sustained a laceration on his left shin, contusions to the head and face, scratches, swelling above his eyes, bruises on his arms, as well as "mental anguish and pain and suffering."

---

[3]     A national index shows that Holleman has filed over twenty lawsuits in the federal district courts, including civil rights claims and habeas corpus petitions.   At least four prisoner civil rights actions filed by Holleman have been dismissed as frivolous or for failure to state a claim.   *See Holleman v. Gillett*, 3:96cv3320 (N.D. Tex. May 19, 1997) (frivolous); *Holleman v. Board of Pardons and Paroles*, 7:98cv0083 (N.D. Tex. Sept. 20, 1999) (frivolous); *Holleman v. Avants*, 1:01cv0016 (N.D. Tex. Oct. 19, 2001) (frivolous and failure to state a claim); and *Holleman v. West End Cab Co.*, 3:01cv1166 (N.D. Tex. June 18, 2001) (failure to state an actionable claim).

[4]     The only remaining defendants are Lieutenant McKee and Sergeant Simmons.   Previous claims against another officer, James Burchell, were dismissed when his lack of personal involvement became apparent. (Doc. # 43).   Likewise, Holleman in his amended complaint has abandoned a claim previously lodged under the Americans with Disabilities Act.

Holleman claims that, in their effort to seize the inventory property sheet from him, Lieutenant McKee and Sergeant Simmons used excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual treatment.  Holleman seeks compensatory damages of up to $7,500.00 from each defendant for his physical and emotional injuries. Holleman also seeks unspecified punitive damages.

The defendants do not dispute that force was used, or that Lieutenant McKee and Sergeant Simmons were participants in that altercation, but they insist that the force employed was no more than the amount necessary to restore order and discipline.  The defendants also do not dispute that Holleman sustained a U-shaped laceration on his left shin as a result of that use of force.  The defendants move for summary judgment on the grounds that the injury sustained was no more than *de minimis* and therefore insufficient to establish a valid claim under the Eighth Amendment.  Alternatively, the defendants move for summary judgment on the issue of qualified immunity.  Holleman has filed a response to the defendants' motion.  The parties' arguments are addressed below under the governing standards of review.

## II.    <u>STANDARD OF REVIEW</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477

8

U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.   <u>DISCUSSION</u>

The defendants move for summary judgment on the grounds that Holleman did not suffer the requisite physical injury to make a claim under the Eighth Amendment. Alternatively, the defendants move for summary judgment on the issue of qualified immunity. Public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even if a defendant's actions have violated a constitutional right, qualified immunity is nonetheless appropriate if "the defendant's actions were 'objectively reasonable' with reference to 'clearly established law' at the time of the conduct in question." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (quoting *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998)).

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity enquiry overlaps substantially with the defendants' contention that the plaintiff's Eighth Amendment claim

lacks merit.  Accordingly, the Court first addresses the merits of the claim that Holleman asserts under the Eighth Amendment standard that applies in the prison use-of-force context.

### A.      Eighth Amendment — Excessive Force

Claims of excessive force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment.  In that context, it is well established that not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action under the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In that respect, the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"  *Id.* at 9-10 (citation and quotation omitted).  To prevail on an excessive force claim under the Eighth Amendment, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result.  *See Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson*, 503 U.S. at 7; and *Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993)).

While the defendants concede that some force was used, they argue that Holleman's Eighth Amendment claim lacks merit because he fails to establish that he suffered the requisite physical injury as a result.  As the Fifth Circuit has emphasized, "some physical injury is an indispensable element of an Eighth Amendment excessive force claim."  *Id*. Thus, to establish liability under the Eighth Amendment, the Fifth Circuit has held that a

prisoner "must have suffered from the excessive force a more than *de minimis* physical injury," adding that "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924.

In this instance, Holleman alleges that he suffered a laceration on his left shin, contusions to the head and face, scratches, swelling above his eyes, and bruises on his arms, in addition to mental anguish, pain, and suffering.  (Doc. # 68, Amended Complaint, ¶ 27). The defendants argue that Holleman's allegations are refuted by his medical records.

The defendants point to records from Holleman's examination by the medical department immediately following the use of force, which establish that the only injury suffered by Holleman was a 2-3 centimeter U-shaped laceration on his left shin.  No other cuts, bruises or contusions were noted at that time.  There is no evidence that stitches were necessary.  Officers took photographs of Holleman while he was at the medical department and those photographs accompany the Use of Force Report.  The photographs primarily show Holleman's pre-existing skin condition. These photographs reflect that Holleman suffered only a minimal injury, if any, as a result of the use of force and that he appeared to be in no distress following the incident.  An hour after the examination, Holleman signed a written statement refusing any further medical treatment.  The defendants argue, therefore, that Holleman's Eighth Amendment claim fails as a matter of law because the injury sustained during the use of force, if any, was no more than *de minimis*.

Holleman insists that the nurse who conducted the medical examination at the Walls Unit following the use of force is lying about whether she observed additional bruising.  He

points to records from a different medical examination conducted on the day after the alleged assault, on August 14, 2003, following Holleman's transfer to the Darrington Unit.  The examination report shows that Holleman complained of a headache and pain in his left chest and shoulder.  During that examination, however, the nurse did not observe signs of a beating of the type described by Holleman.  The nurse noted only "mild swelling above [Holleman's] left eye brow and bruises on his left forearm."

The defendants have presented an affidavit from a physician, Dr. Bruce W. Smith, who states that, even assuming that these injuries are attributable to the use of force at issue, the "mild swelling" and bruises noted at the Darrington Unit are consistent with reasonable efforts to restrain an unruly inmate.  (Doc. # 66, Exhibit A, Affidavit of Dr. Bruce W. Smith).  Dr. Smith notes further that Holleman was examined subsequently on August 21, 2003, and September 6, 2003, but that Holleman did not complain during these examinations of any headaches, memory deficits, or any other symptoms stemming from the use-of-force incident on August 13, 2003.  (*Id.*).  The only injury noted after the August 13, 2003 incident was the laceration on Holleman's lower left leg, which has since healed and poses no long-term problem.  (*Id.*).  According to Dr. Smith, there is no evidence to support Holleman's other claimed injuries.[5]  (*Id.*).

---

[5]    Previously in this case, in pleadings filed by the plaintiff *pro se*, Holleman had also alleged that he suffered a concussion, post-concussion headaches for 15-16 weeks, blurred vision,  and a continuing "short circuit" in his ability to form and process information. (Doc. # 1, Original Complaint, at 3).  These allegations are not included in the amended complaint and are deemed abandoned. (Doc. # 68, Amended Complaint, ¶ 27).  In any event, there is no evidence in the summary judgment record to substantiate any of these alleged injuries.

This record establishes that Holleman suffered a 2-3 centimeter laceration on his left shin and bruises to his left eye brow and left forearm.  The question is whether these injuries are sufficient to make an excessive-force claim under the Eighth Amendment or whether they are *de minimis*.  The Fifth Circuit has not issued a published opinion creating a bright line rule or definition of what constitutes a sufficient physical injury to state a viable claim for Eighth Amendment purposes as opposed to injury that is deemed *de minimis*.[6]  The Fifth Circuit has simply stated the general rule that "some" physical injury is required to constitute an excessive-force claim under the Eighth Amendment.  *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)).

As another court in this circuit has concluded, a "physical injury" of the sort actionable under the Eighth Amendment "is an observable or diagnosable medical condition requiring treatment by a medical care professional."  *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).  In that regard, a more-than-*de minimis* "physical injury" is not a sore muscle, aching back, scratch, abrasion, or bruise of the type that would not otherwise force a "free world person" to seek medical treatment.  *See id.*  This standard is consistent with what the Fifth Circuit has found sufficient to make an Eighth Amendment claim for excessive force.  For example, the Fifth Circuit has decided that, where an officer twisted a prisoner's arm and twisted his ear, resulting in bruising and soreness that lasted for three

---

[6]       The term "*de minimis*" is a shortened form of the Latin maxim "*de minimis non curat lex*," which means that "the law does not concern itself with triffles."  BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 263 (2nd ed. 1995).  Used appropriately, *de minimis* is a fancy substitute for something that is "minimal."  *Id.* at 264.

days, the injury was *de minimis* and would not support an Eighth Amendment claim.  *See*

*Siglar*, 112 F.3d at 193-94.  A recent unpublished case from the Fifth Circuit, although not

binding precedent, provides further information about what level of injury is considered *de*

*minimis* and therefore insufficient to make a valid Eighth Amendment claim.  *See, e.g., Earl*

*v. Dretke*, 177 Fed. App'x 440, 2006 WL 1096707 (5th Cir. 2006) (noting that allegations

that an officer injured an inmate by causing him to lose a fingernail, which caused bleeding

and swelling, fail to state an excessive-force claim because the injuries were *de minimis*).

Another circuit court of appeals has also found that two small bruises and "minor cuts" were

"clearly *de minimis*" and therefore not actionable under the Eighth Amendment or the Prison

Litigation Reform Act, 42 U.S.C. § 1997e(e).[7]  *See Corsetti v. Tessmer*, 41 Fed. App'x 753,

755, 2002 WL 1379033 (6th Cir. 2002); *see also Johnson v. Moody*, No. Civ. 05-0196, 2006

WL 898135, *6 (S.D. Ala. March 29, 2006) (concluding that a cut on an inmate's right

middle finger was a *de minimis* injury that did not establish an Eighth Amendment claim for

excessive force).

By contrast, allegations that an inmate has suffered injuries resulting in long-term

damage as the result of an intense encounter with correctional officers are not likely to be

considered *de minimis*.  In *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999), the

Fifth Circuit found that the plaintiff demonstrated more than *de minimis* physical injury

---

[7]     The Prison Litigation Reform Act, which governs this suit, also provides that "[n]o federal
civil action may be brought by a prisoner confined in jail, prison or other correctional facility
for mental or emotional injury suffered while in custody without a prior showing of physical
injury." 42 U.S.C. § 1997e(e).

where he allegedly suffered multiple "cuts, scrapes, contusions to the face, head and body" as a result of being knocked down so that his head struck the concrete floor, his face was then scraped against the floor, he was repeatedly punched in the face by two officers using their fists for about five minutes, and then a third officer kicked him in the face and head, after which one of the two officers continued to hit the plaintiff with his fist. *See also Hudson*, 503 U.S. at 10 (stating that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate are not *de minimis* for Eighth Amendment purposes).

Holleman contends that the laceration to his left leg did require subsequent medical treatment and that he now bears a U-shaped scar that remains visible today. The medical records for that treatment show that the dressing was changed on Holleman's wound on August 22, 2003, and cleaned with "betadine." The nurse noted that day that the center of the wound had a "greenish grey mushy texture," but reported only "minimal grey drainage on [the] old dressing." (Doc. # 69, Exhibit 10). Holleman's dressing was changed again the following day, on August 23, 2003, where "open areas" were noted with "moderate pink serous sanguineous drainage." (Doc. # 69, Exhibit 11). Holleman was given a shower pass for ten days and ordered to change the dressings. (*Id.*). No drainage or infection was noted on September 6, 2003, however, where the wound was reportedly "filled in 95%." (Doc. # 69, Exhibit 12). Recent pictures submitted by Holleman show that he bears a small scar. (Doc. # 69, Exhibits 9 -11).

The medical records reflect that Holleman refused care on several occasions following the use of force, undercutting his claim that his wound required medical treatment or that he

was in pain.  (Doc. # 45, Martinez Report, Exhibit C) (containing signed statements by Holleman refusing medical treatment or services on August 13, 2003 (the day of the incident), August 27, 2003, September 5, 2003, September 11, 2003, and September 16, 2003).  The need for dressing changes to keep a small cut clean and the fact that he now has a small scar neither transform Holleman's injury into one comparable to the sort outlined by the Fifth Circuit in *Gomez* or by the Supreme Court in *Hudson*, nor establish that the injury sustained as a direct result of the use of force was more than minimal.

The evidence demonstrates, moreover, that the underlying use-of-force encounter, lasting only 1½ to 2 minutes as Holleman recounts it, makes this case far closer to the incident outlined in *Siglar*, which involved a limited encounter with correctional officers that was unlikely to produce the more serious physical harm of the sort alleged in *Gomez*.

Thus, the Court concludes after construing the facts in the light most favorable to Holleman that the injuries sustained by him fit within the category of *de minimis* harms that are excluded from liability under the Eighth Amendment.  Because Holleman has not presented evidence that raises a genuine issue of material fact about whether he suffered the requisite physical injury, his Eighth Amendment claim fails as a matter of law.  The defendants' motion for summary judgment on this issue is granted.

### B.   Qualified Immunity

Alternatively, the defendants argue that they are entitled to qualified immunity from suit.  As noted above, public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*,

17

457 U.S. 800 (1982).  Officials sued in their individual capacities are protected by qualified immunity unless the alleged act violates a constitutional right that was clearly established at the time.  *Sanchez v. Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998).  "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions."  *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).  The first step has two parts: First, the Court must decide whether the plaintiff alleged a constitutional violation, and that the violation is of a clearly established constitutional right.  *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537.

18

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*. The record in this case, as discussed further below, does not show that the defendants violated the Eighth Amendment or that their actions were objectively unreasonable under the circumstances presented here.

### 1.    Violation of a Clearly Established Constitutional Right

As referenced above, to prevail on an excessive force claim under the Eighth Amendment, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result. *See Eason*, 73 F.3d at 601-02.  Relevant factors to consider in evaluating an excessive-force claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Gomez*, 163 F.3d at 923.  As noted previously, the summary judgment evidence does not show that the defendants' conduct violated a constitutional right because Holleman has not

established (or raised a genuine fact issue) that he suffered the requisite physical injury to satisfy an essential element of an Eighth Amendment claim.  Apart from the minimal extent of his injuries, other factors relevant to an Eighth Amendment excessive-force claim further militate in favor of the defendants.

Holleman, who was already in pre-hearing detention for refusing his cell assignment, does not dispute that he disobeyed repeated orders by the defendants.  The defendants admit that force was used to place Holleman in restraints because of his belligerent attitude.  The uncontradicted evidence, *see, e.g.,* the affidavit of Dr. Bruce W. Smith (Doc. # 66, Exhibit A), shows that the injuries sustained by Holleman, if any, were consistent with an effort to restrain a disagreeable inmate and not with a "beating" as Holleman alleges.  The evidence further shows that the amount of force used was not excessive to the need as the altercation with Lieutenant McKee and Sergeant Simmons was brief by Holleman's own estimate, lasting no more than 2 minutes.  Further, the evidence also suggests that efforts were made to temper the severity of a forceful response because the altercation was brief in duration and Holleman's injuries, if any, were minimal.

Lieutenant McKee and Sergeant Simmons claim that Holleman adopted an aggressive stance, although Holleman disputes this.  There also is a dispute as to when Lieutenant McKee and Sergeant Simmons reasonably perceived Holleman to be a threat because they did not call for a video camera right away to record any potential use of force. Holleman attempts to show that the defendants violated the Eighth Amendment by failing to follow the TDCJ use-of-force policy by timely requesting a video camera.  Sergeant Simmons explained

in his deposition that, under the circumstances, he needed to restrain Holleman before he could reach for his radio and request the video camera.  (Doc. # 69, Exhibit 13, at 39).  The use-of-force policy in place at TDCJ simply requires an officer to request a video camera "as soon as possible after an unexpected confrontational situation arises," and to record uses of force "whenever the situation permits."  (Doc. # 69, Exhibit 4, TDCJ Use of Force Plan, May 2003, at §§ III.B.2.a(2), (3)).  An administrative investigation, as documented by the Use of Force Report, did not find a violation of TDCJ policy.  Likewise, Holleman does not demonstrate a violation of the policy here.  Even if there were, any failure by prison officials to comply with their own policies and procedures does not, standing alone, demonstrate a constitutional violation.  *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (noting that a state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam) (rejecting an inmate's claim that TDCJ's mere failure to follow an administrative rule violated his constitutional rights).

After considering all of the above-referenced relevant factors, the Court concludes that Holleman has not raised a genuine fact issue that the defendants' use of force was maliciously or sadistically employed or that it was the sort of conduct "repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 10.  Thus, under these circumstances, Holleman has not demonstrated the violation of a constitutional right.  The Supreme Court has held that if the defendants' conduct did not violate a constitutional right, then the defendant is entitled to qualified immunity and it is unnecessary to consider whether the

asserted right was "clearly established." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *see also Martinez v. Texas Dep't of Crim. Justice*, 300 F.3d 567, 577 (5th Cir. 2002) (finding that, because plaintiff's First Amendment retaliation claim failed, the defendants were entitled to qualified immunity because plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis). Because Holleman has failed to raise a genuine issue of material fact on whether the defendants committed a constitutional violation, the defendants are entitled to summary judgment on the first prong of the qualified immunity analysis.

### 2.     Objective Reasonableness

In addition, the defendants argue that their actions were objectively reasonable under the circumstances. In support, the defendants point to the Use of Force Report, which shows that the officers used limited force in good faith for the purpose of maintaining order and restoring discipline after Holleman refused direct orders to return the inventory sheet and assumed an aggressive posture toward the officers. As noted, the use of force was investigated by a ranking officer and reviewed by administrators, who found no violation of TDCJ policy.

To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added). "The doctrine of

qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Holleman disputes that the defendants were merely trying to restore order and discipline or that force was applied in good faith. Holleman does not, however, dispute that he had disobeyed the officers' repeated orders to return the inventory sheet or that the officers had a legitimate interest in its return. Holleman denies taking an aggressive physical stance toward the officers and alleges that the officers beat him for no reason. The objective and undisputed evidence of record, however, does not support his claim that a beating (as opposed to force necessary to handcuff a recalcitrant prisoner) occurred or that officers used force excessive to the need when they put him in handcuffs after his sustained insubordination. Where qualified immunity is asserted, Holleman, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Holleman's unsupported and self-serving assertions that he was "beaten for no reason" are insufficient. He has not met his summary judgment burden here. Summary judgment on the defendants' assertion of qualified immunity is warranted.

23

IV.     **CONCLUSION AND ORDER**

Based on the foregoing analysis, the Court concludes that the defendants are entitled to qualified immunity from Holleman's claims.  The defendants' motion for summary judgment is granted.  The Court accordingly **ORDERS** as follows:

1.      The defendants' motion for summary judgment (Doc. # 66) is **GRANTED**.

2.      The plaintiff's motion for a hearing on summary judgment (Doc. # 69) is **DENIED**.

3.      The order appointing counsel for the plaintiff (Doc. # 47) and the current scheduling order (Doc. # 48) are **TERMINATED**.

The Clerk is directed to provide copies of this order to the parties.

SIGNED at Houston, Texas, on this **27th** day of **November, 2006**.

Nancy F. Atlas
United States District Judge